UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------ X

MANUEL COLON,

                    **Petitioner,**

   - against -

DALE ARTUS, Superintendent,
Clinton Correctional Facility

                 **Respondent.**

------------------------------------------------------ X

SHIRA A. SCHEINDLIN, U.S.D.J.:

**OPINION AND ORDER**

**08 Civ. 2757 (SAS)**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/20/08

## I.    INTRODUCTION

Petitioner Manuel Colon seeks a writ of habeas corpus pursuant to

section 2254 of Title 28 of the United States Code ("section 2254"), challenging

his state court conviction for two counts of robbery in the first degree[1] and one

count of endangering the welfare of a child.[2]   Colon is currently serving two

consecutive terms of ten years imprisonment on the robbery charges, and a

concurrent one-year term on the child endangerment charge.   Colon asserts that the

state court judge who tried his case improperly determined that a witness's in-

---

[1]    *See* N.Y. Penal Law § 160.15(4).

[2]    *See id.* § 260.10(1).

-1-

court identification was independently reliable even though an earlier

identification procedure may have been impermissibly suggestive.

## II.    BACKGROUND

On December 13, 2003, a man robbed Kesia Lora and her ten-year-

old daughter, Betsy Vasquez ("Betsy"), in an elevator at the public housing

complex where they lived.[3]  Lora called the police.[4]  Eight days later, the police

arrested Colon after Lora identified him as her assailant.[5]

On February 26, 2004, Lora took Betsy to the 23rd Precinct in

Manhattan[6] to see if she could identify Colon in a police line-up.[7]  Prior to that

date, Betsy had never described the assailant to the police.[8]

At the line-up, Detective Thomas Fischer instructed Betsy not to

---

[3]     *See* Memorandum of Law in Opposition to the Petition for a Writ of
Habeas Corpus ("Resp. Mem.") at 2; Petition for a Writ of Habeas Corpus for a
Person in State Custody ("Pet.") at 2.

[4]     *See* Resp. Mem. at 2; Pet. at 6.

[5]     *See* Resp. Mem. at 17-18; *see also* Pet. at 9.

[6]     *See* 9/13/04 – 9/14/04 Transcript of Pre-Trial Hearing of Manuel
Colon ("Hearing Tr.") at 143.

[7]     *See id.* at 63.

[8]     *See* Reply Memorandum of Law in Support of Petitioner Manuel
Colon's Petition for a Writ of Habeas Corpus ("Rep. Mem.") at 3; Resp. Mem. at
32.

make an identification unless she was one hundred percent sure of her identification.[9]  Betsy viewed the line-up outside of the presence of her mother.[10] Betsy later testified that she thought the man in the line-up's number two spot was the assailant, but she was not one hundred percent sure because the man in the line-up had facial hair whereas the assailant did not.[11]  At the line-up, Betsy made no identification.[12]

After Betsy left the line-up, Lora pressed her as to whether she might have recognized one of the men as the assailant but remained silent.[13]  At that point, Betsy told her mother: "I think it was number two but I didn't say anything."[14]  Betsy said that she did not identify the man in the number two position only because she was not "a hundred percent sure" that he was the assailant.[15]  Detective Fischer overheard this conversation and testified that it

---

[9]      *See* Hearing Tr. at 151, 67, respectively.

[10]     *See id.* at 69.

[11]     *See id.* at 153 ("I was sure[,] but he had grew [sic] facial hair so that's the only thing that made me a little bit confused.").

[12]     *See id.* at 69.

[13]     *See id.* at 154.

[14]     *Id.*

[15]     *Id.* at 144.

happened as Betsy described.[16]  Colon was the number two man in the line-up.[17]

A police detective then showed Betsy a photograph of Colon.[18]  Betsy confirmed that the man in the photograph was the assailant.[19]  The only issue before this Court is whether Betsy's exposure to this photograph should have made her in-court identification of Colon inadmissable.

Prior to trial, Justice Richard Carruthers of the New York County Supreme Court determined that the photograph may have had an impermissibly suggestive effect on Betsy, and ordered a hearing to determine the independent reliability of any identification she might make at trial.[20]  At the hearing, Betsy testified that during the robbery:  she had viewed the assailant's whole body from a few feet away;[21] that the assailant's face was not obscured by his hood;[22] that she

_____

[16]    See id. at 71.

[17]    See id. at 64.

[18]    See id. at 145.  Detective Fischer does not specifically recall showing Betsy the photograph, but admits that "it probably was [him], it was [his] case." Id. at 89.

[19]    See Rep. Mem. at 1; Resp. Mem. at 20.

[20]    See Hearing Tr. at 128-129.

[21]    See id. at 140, 142.

[22]    See id. at 141.

viewed the assailant's face between three and five times;[23] that lighting conditions
in the elevator were good and Betsy's view was unobstructed;[24] and that she had
opportunity to view the assailant for "[a] couple of minutes."[25]  Betsy also testified
that the assailant was wearing "light blue jeans, a black leather coat, construction
boots and a hood."[26]

Betsy and Detective Fischer repeatedly testified that Detective
Fischer had instructed Betsy not to make an identification at the line-up unless she
was one hundred percent sure of her decision.[27]  Betsy testified that she "was sure
[that the number two man in the line-up was the assailant] but [that Colon] had
grew [sic] facial hair so that's the only thing that made me a little bit confused."[28]
At the hearing, Justice Carruthers summarized Betsy's testimony as follows:

> DEFENSE COUNSEL: Let me start first with Betsy
> Vasquez.  The identification here is irreparably tainted.
> She goes in [to the line-up], she does not make an I.D.  She
> comes out, she reaffirms[,] signing a piece of paper that she

---

[23]  *See id.* at 149.

[24]  *See id.* at 141.

[25]  *Id.* at 142.

[26]  *Id.* at 140.

[27]  *See, e.g., id.* at 151 and 67, respectively.

[28]  *Id.* at 153.

does not recognize anybody.  She says to her mother[, "]I think it was number two but I'm not sure.["]

THE COURT:  That's not what she said.  She didn't say that.  And she really was following the officer's explicit directions.  He was the one who said to her you have to be a hundred percent sure.  She followed those directions.  And when she said, when she saw him, number two, she thought it was him but he had facial hair and he didn't have it at the time of the incident.  So, because she wasn't a hundred percent sure, she didn't make the identification.

But . . . she came out and she told her mother what had happened, but that she did think it was number two.  And the only reason she didn't say it was because of the instruction she was following . . . .[29]

At the end of the hearing, Justice Carruthers determined that Betsy would be allowed to identify Colon in court because – even though she had been shown the photograph of Colon – her ability to identify him was independently reliable.[30]  Justice Carruthers stated, "I believe that it [the contact in the elevator] was an independent source."[31]  He also stated that "the issue here is whether the witness had an ample opportunity to see the perpetrator.  And in this case [she] did."[32]

---

[29]  *Id.* at 177-178.

[30]  *See id.* at 179.

[31]  *Id.*

[32]  *Id.* at 179-180.

At trial, Betsy testified that Colon was the assailant.[33]  The jury

convicted Colon on two counts of first degree robbery and one count of

endangering the welfare of a child.[34]

Colon filed the instant petition on March 14, 2008.  Respondent does

not challenge the timeliness of the petition or the fact that petitioner has fully

exhausted his habeas claim in state court.[35]  The only question before this Court is

whether Justice Carruthers improperly determined that Betsy's in-court

identification was independently reliable.

## III.   LEGAL STANDARDS

### A.   Section 2254 Standard

This petition is governed by the Antiterrorism and Effective Death

Penalty Act of 1996 ("AEDPA").  The AEDPA provides that a federal court can

grant a writ of habeas corpus to a state prisoner only if the state court's denial of

relief "was contrary to, or involved an unreasonable application of, clearly

established Federal law, as determined by the Supreme Court of the United

---

[33]   *See* 9/22/04 Trial Transcript at 288.

[34]   *See* Pet. at 2.

[35]   *See* Resp. Mem. at 24-25.

States."[36]  As explained by the Supreme Court, a state-court decision is "contrary

to" clearly established federal law in the following instances:

> First, a state-court decision is contrary to this Court's precedent if the state court arrives at a conclusion opposite to that reached by this Court on a question of law. Second, a state-court decision is also contrary to this Court's precedent if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours.[37]

With regard to the "unreasonable application" prong, the Supreme Court has stated

that

> a state-court decision can involve an "unreasonable application" of this Court's clearly established precedent in two ways.   First, a state-court decision involves an unreasonable application of this Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case.  Second, a state-court decision also involves an unreasonable application of this Court's precedent if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.[38]

> In order for a federal court to find a state court's application of

---

[36]   28 U.S.C. § 2254(d)(1).

[37]   *Williams v. Taylor,*  529 U.S. 362, 405 (2000).

[38]   *Id.* at 407.

Supreme Court precedent to be unreasonable, the state court's decision must have been more than incorrect or erroneous: "[t]he state court's application of clearly established law must be objectively unreasonable."[39] This standard "'falls somewhere between merely erroneous and unreasonable to all reasonable jurists.'"[40] While the test requires "'[s]ome increment of incorrectness beyond error, . . . the increment need not be great; otherwise *habeas* relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence.'"[41] Thus, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."[42]

## B.    Admissibility of In-Court Identifications

Under established federal law, a state court may allow a witness to

---

[39]    *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). *Accord Williams*, 529 U.S. at 409; *Harris v. Kuhlman*, 346 F.3d 330, 344 (2d Cir. 2003).

[40]    *Overton v. Newton*, 295 F.3d 270, 276 (2d Cir. 2002) (quoting *Jones v. Stinson*, 229 F.3d 112, 119 (2d Cir. 2000)).

[41]    *Id*. (quoting *Francis v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000) (emphasis in original)).

[42]    *Williams*, 529 U.S. at 411.

identify a defendant in court – even after an impermissibly suggestive pretrial

identification procedure – "if, considering the totality of the circumstances,

there is sufficient evidence of reliability apart from the tainted investigation.  If

so, the identification is admissible independent of the suggestive nature of the

pretrial identification."[43]  The Supreme Court has identified five factors that

may be considered as independent indicia of the reliability of a witness's

identification:

> 1) the opportunity of the witness to view the suspect at
> the time of the crime; 2) the witness's degree of
> attention; 3) the accuracy of the witness's prior
> description of the criminal; 4) the level of certainty
> demonstrated at the confrontation; and 5) the time
> elapsed between the crime and the confrontation.[44]

While a court may consider each of these factors, "[a] good or poor rating with

regard to any one of these factors will generally not be dispositive."[45]  Instead,

"in each case, the question of independent reliability must be assessed in light

---

[43]    *Ortiz v. Artuz*, 113 F. Supp. 2d 327, 337 (E.D.N.Y. 2000) (citing
*Manson v Brathwaite*, 432 U.S. 98 (1976); *Neil v. Biggers*, 409 U.S. 188 (1972)).

[44]    *Id.* (citing *Biggers*, 409 U.S. at 199-200; *Manson*, 432 U.S. at 114.).

[45]    *Raheem v. Kelly*, 257 F.3d 122, 135 (2d Cir. 2001) (citations
omitted).

-10-

of the totality of the circumstances."[46]

The application of these factors "embod[ies] mixed findings of law and fact[.]"[47] On habeas review, "[t]he court presumes that factual findings by a state court are correct unless petitioner rebuts this presumption with 'clear and convincing evidence.'"[48] Thus, where a state court reasonably determines that an in-court identification is independently reliable after considering the totality of the circumstances, habeas relief is not generally available.

## IV.  DISCUSSION

Although Justice Carruthers did not explicitly enumerate his findings with reference to the *Biggers* factors before determining that Betsy's in-court identification was independently reliable, the absence of such formal analysis is at worst an inconvenience for the habeas court. Justice Carruthers conducted a hearing to determine the independent reliability of Betsy's identification,[49] after

---

[46]  *Id.* (citing, *inter alia*, *Biggers*, 409 U.S. at 199).

[47]  *Dickerson v. Fogg*, 692 F.2d 238, 243 (2d Cir. 1982).

[48]  *Osborne v. Miller*, No. 03 Civ. 2761, 557 F. Supp. 2d 435, 438 (S.D.N.Y. 2008) (quoting 28 U.S.C. § 2254 (e)(1)). *Accord Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (citing *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)) (holding that the standard for rebuttal of presumption of correctness is "demanding but not insatiable").

[49]  *See* Hearing Tr. at 128-129.

-11-

which time he determined that her in-court identification would be reliable.[50]

As to the first and second factors – Betsy's opportunity to view the defendant and her degree of attention during the incident – Justice Carruthers concluded that "the issue here is whether the witness had an ample opportunity to see the perpetrator.  And in this case both witnesses did."[51]  Justice Carruthers reached this conclusion after hearing Betsy testify that she had a chance to view the defendant's whole body from a few feet away,[52] that the defendant's face was not obscured,[53] that she viewed the defendant's face between three and five times,[54] that lighting conditions in the elevator were good and Betsy's view was unobstructed,[55] and that she had opportunity to view the defendant for "[a] couple of minutes."[56]  Putting aside Betsy's description of Colon's physical features –

---

[50]    *See id.* at 179 ("I believe that it [Betsy's experience in the elevator] was an independent source.").

[51]    *See id.* at 179-180.  The term "both witnesses" refers to Betsy and Lora.  The independent reliability of Lora's identification was in issue at the time of the pre-trial hearing but was not raised in Colon's petition.

[52]    *See id.* at 140, 142.

[53]    *See id.* at 141.

[54]    *See id.* at 149.

[55]    *See id.* at 141.

[56]    *Id.* at 142.

which she could have seen at the line-up and/or when looking at Colon's picture –
Betsy's detailed memory of the perpetrator's clothing also supports the conclusion
that she was paying close attention during the robbery.[57]

The third factor – the accuracy of a witness' prior description – was
not relevant to Justice Carruthers' determination because Betsy did not provide a
description of the alleged perpetrator prior to the line-up.[58]

Justice Carruthers's consideration of the fourth factor – Betsy's level
of certainty at the confrontation – is plainly demonstrated by his summary of
Betsy's testimony at the hearing.[59]   Justice Carruthers observed that Betsy "wasn't
a hundred percent sure . . . but that she did think it was number two[, a]nd the only
reason she didn't say it was because of the instruction she was following[.]"[60]
Justice Carruthers offered these observations after both Betsy and Detective
Fischer repeatedly testified that Detective Fischer had instructed Betsy not to
make an identification at the line-up unless she was one hundred percent sure of

---

[57]     *See id.* at 140.

[58]     *See* Rep. Mem. at 3. *See also* Resp. Mem. at 32.

[59]     *See supra* note 29 and accompanying text (quoting Hearing Tr. at
177-178).

[60]     Hearing Tr. at 178.

her decision.[61]  Betsy testified that she "was sure but [that Colon] had grew [sic]

facial hair so that's the only thing that made me a little bit confused."[62]  There is

thus no doubt that Justice Carruthers considered the fourth *Biggers* factor and

reached a reasonable conclusion based on the evidence.

Justice Carruthers did not explicitly address the fifth *Biggers* factor –

the amount of time that had elapsed between the crime and the confrontation – but

there was no reason to do so.  He had heard testimony that the crime happened on

December 13, 2003, and the line-up occurred on February 26, 2004.

In sum, petitioner has not shown that the state court's determination

was unreasonable in light of the totality of the circumstances.  Accordingly,

petitioner has failed to demonstrate that the state court judge unreasonably applied

clearly established federal law or incorrectly determined an issue of fact.

## V.    CONCLUSION

The remaining issue is whether to grant a certificate of appealability

("COA").  For a COA to issue, petitioner must make a "substantial showing of the

denial of a constitutional right."[63]  A "substantial showing" does not require a

---

[61]     *See, e.g.*, Hearing Tr. at 151 and 67, respectively.

[62]     *Id.* at 153.

[63]     28 U.S.C. § 2253(c)(2).

-14-

petitioner to demonstrate that he would prevail on the merits, but merely that reasonable jurists could debate whether "the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"[64]  Petitioner has made no such showing. Accordingly, I decline to grant a certificate of appealability.

For the foregoing reasons, petitioner's motion for habeas relief is denied.  The Clerk of the Court is directed to dismiss the petition [Document #1 on the docket] and close this case.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:       New York, New York
             November 19, 2008

---

[64]     *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)).  *Accord Middleton v. Attorneys Gen. of the States of New York and Pennsylvania*, 396 F.3d 207, 209 (2d Cir. 2005) (denying COA where reasonable jurists could not debate whether the district court's dismissal of the petition was correct).

-15-

**- Appearances -**

**For Petitioner:**

Ana Paula Vuk-Pavlovic
Office of the Appellate Defender
11 Park Place, Suite 1601
New York, NY 10007
(212) 402-4133

**For Respondent:**

Ashlyn Hope Dannelly
New York State Office of the Attorney General
120 Broadway
New York, NY 10271
(212) 416-8624